

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF | § | No. 08-23-00294-CV |
| J.A.G. II, | § | Appeal from |
| A JUVENILE. | § | County Court at Law No. 1 |
| | § | of Webb County, Texas |
| | § | (TC# 2023JV1000046L1) |

## OPINION

J.A.G., II appeals the juvenile court's order waiving its exclusive original jurisdiction and transferring his case to criminal district court. He challenges the sufficiency of the evidence supporting the court's findings under § 54.02(f) of the Texas Juvenile Justice Code and contends the court abused its discretion in waiving its jurisdiction. For the reasons set forth below, we affirm the juvenile court's order.[1]

## BACKGROUND

After authorities identified 37 videos, a sampling of which depicted adults forcing sexual acts on children as young as six to 12 months old, J.A.G. was referred to the Webb County Juvenile

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

Probation Department on multiple counts of possession of child pornography (a third-degree felony) and possession of child pornography with intent to distribute (a second-degree felony). Tex. Penal Code Ann. § 43.26. Soon after, the State filed a transfer petition, in which it requested that the juvenile court waive its jurisdiction and transfer J.A.G.'s case to criminal district court so he could be tried as an adult.

Approximately nine months before J.A.G. turned 18, the juvenile court held a two-day hearing on the State's petition. Several witnesses testified.[2] Dr. Grover Rollins, a licensed forensic psychologist, testified to the results of J.A.G.'s diagnostic evaluations. He discussed the results of J.A.G.'s Test of Nonverbal Intelligence, on which he scored a 114-index score with an 83rd percentile rank, or "above average by four points." Dr. Rollins also determined through the Adolescent Psychopathology Scale test that J.A.G. did not have "any type of mental illness or anything outside of some anxiety or concern about his current legal situation." Dr. Rollins further assessed J.A.G. through a Risk Sophistication Treatment Inventory, by which he determined J.A.G. presented "no type of risk of being dangerous or a harm to the community, and he showed emotional maturity, meaning he does well in school, his IQ, and things of that matter." Dr. Rollins concluded based on these results that "there's a good probability that [J.A.G. will] be amenable to treatment." And he completed a Structured Assessment of Violent Risk in Youth, where J.A.G.'s results showed "a very low potential or no-risk-of-violence potential."

Dr. Rollins opined that he "felt that [J.A.G.] had the maturity to also communicate with his attorney and discuss . . . those matters, [and] that he had a basic understanding of the situation." He concluded that J.A.G. understands "the difference between right and wrong on basic situations"

---

[2] J.A.G. stipulated to probable cause on the alleged offenses, so the State did not present any evidence or witnesses on that point.

and has "no mental deficits or any mental issues that would impede the process of discretionary transfer." Dr. Rollins emphasized that for J.A.G., "the main thing is treatment," and "[h]owever he gets it, that needs to be the most important thing." After an exchange regarding the length of treatment plans for juveniles and adults convicted of similar offenses, the court examined Dr. Rollins:

THE COURT: Dr. Rollins, when you say that you've treated juveniles two or three years, is it because they're done or is it because their probationary term is over?

DR. ROLLINS: Because their probationary term is over.

Tiffany Salazar, J.A.G.'s juvenile probation officer, also testified, speaking specifically to the findings in her Social Evaluation Investigation Report. Ms. Salazar confirmed that J.A.G. has no prior history with the juvenile justice system. She spoke to his family background, which she characterized as "stable," and noted that J.A.G. has "a really good relationship with his mother," who "is constantly willing to support him in anything that he might need" and reported "no behavior issues" with J.A.G. Ms. Salazar testified that J.A.G. worked part-time, had passed three drug tests, was doing "really good" in school, and has complied with everything she asked of him.

Ms. Salazar concluded by recommending that the juvenile court waive its jurisdiction and transfer J.A.G. to criminal district court. She based her recommendation in part on the fact that J.A.G. would soon be aging out of the juvenile justice system, and she did not believe that J.A.G. could be "adequately rehabilitate[d]" before he turned 18 based on the allegations and the resources and programs available to the juvenile probation department. Instead, Ms. Salazar stated that based on her experience, the adult probation department was "best equipped to provide the best specialized care" for J.A.G. given the extreme nature of the alleged offenses. Her report also

3

concluded the alleged offenses were "against a person," which weighed in favor of transfer, but she acknowledged that she was not familiar with the Penal Code.

Adriana Alexander, an administrator at the Juvenile Justice Alternative Education Program where J.A.G. had been attending school, testified on J.A.G.'s behalf. She noted that J.A.G. was "very intelligent" and "scored a perfect score in every subject" on an academic assessment, which was something she had "never seen" in her 20-plus years of experience at the school. She characterized J.A.G.'s demeanor as "outgoing, friendly, confident, [and] helpful" and wrote in a letter to the court that J.A.G. "possesses compassion and a helpful nature." Ms. Alexander also confirmed that she did not see J.A.G. exhibit any aggressiveness or alarming behavior on campus.

Dr. Shelley Graham, a licensed professional counselor, testified on J.A.G.'s behalf and discussed the various assessments that she completed with him. She stated that she believed J.A.G. is "a good candidate for treatment and rehabilitation" and discussed the development of J.A.G.'s mental health issues (namely depression) and circumstances that preceded the alleged offenses, including his grandfather's death and isolation during the COVID-19-related quarantine. Dr. Graham discussed J.A.G.'s results on the Juvenile Sex Offender Assessment Protocol, on which he scored low on likelihood to recidivate and low on likelihood to engage in violent behavior. Given J.A.G.'s proximity to adulthood, Dr. Graham also assessed him on the adult scale through the Risk Matrix, on which he scored average risk. Dr. Graham discussed what a treatment protocol might look like for J.A.G., stating that in her opinion, treating J.A.G. in the juvenile system would be "workable" because there would be enough time before he turns 18 to demonstrate whether he could be rehabilitated through that system. She also discussed her concern that J.A.G. could "potentially shut down" if he were treated in a group setting with adults. In response to that discussion, the juvenile court examined Dr. Graham:

4

THE COURT: [A]re you really in a position to be able to tell the Court that you can rehabilitate this young man within a few months of treatment?

DR. GRAHAM: That is not what I'm saying, Judge, with all due respect. What I'm saying is that I can give an intensive treatment to this young person so that the Court would be able to have the information whether this individual is going to learn from it and actually do the work to get through it, and then we would know there. Because if he's not, then this approach would not be workable. . . . The issue would be can you give him the tools he needs in that amount of time.

Before the hearing concluded, J.A.G.'s mother testified to her relationship with her son, their family's home life, J.A.G.'s background, the challenging circumstances J.A.G. had recently experienced, and her commitment to J.A.G.'s treatment. After closing arguments, the juvenile court announced its decision:

THE COURT: I do want to make sure that ultimately, [J.A.G.], that you get the services that you need. All right? I really do. And so because of that and because of the time constraint, because of the nature of the offenses, I think I'm going to have to waive my jurisdiction. . . . [G]iven the nature of the offense, I need to make sure that you do get the services. I'm not about to say within nine months, okay, you're done. If Dr. Graham had that skill she would be world famous. But I'm sure she can help you. I just think that it might take longer, or I do feel it will take longer than nine months.

The juvenile court entered an order waiving its jurisdiction and transferring J.A.G.'s case to criminal district court. In it, the court listed the alleged criminal violations and made the following relevant findings of fact:

2.  [J.A.G.] . . . on the date of this order is 17 years of age . . . .

3.  [J.A.G.] was 15 years of age at the time of the alleged occurrence . . . .

5.  That no adjudication concerning the alleged offenses has been made or no adjudication hearing concerning the herein alleged offenses has been conducted.

5

6. That the Petition and Notice requirements of the Texas Family Code, Sections 53.04, 53.05, 53.06, and 53.07, have been satisfied, and proper summons notifying the parties that the hearing was for the purpose of considering waiver of jurisdiction and transfer to criminal district court was served upon Juvenile-Respondent, his parent(s) and his attorney.

7. That prior to the hearing, the Court ordered and obtained a Psychological Examination, complete Diagnostic Study, Social Evaluation and full investigation of the child, his circumstances, and circumstances of the alleged offenses.

8. That the Court has considered written reports from the probation officers, professional Court employees, professional consultants, in addition to the testimony of witnesses and finds that the Court at lease [sic] one day prior to this transfer hearing made available to Juvenile-Respondent's attorney all written materials to be considered by the Court in making this transfer decision.

9. That the offenses were against a person or persons.

10. That the Juvenile-Respondent is a sophisticated and mature child.

11. That the Juvenile-Respondent has a record of 1 referrals [sic] to the Webb County Juvenile Department since May 5, 2022, which include 1 referrals [sic] and 0 cases involving probation violations.

12. That there is probable cause to believe that the child committed the offenses as alleged.

13. That because of the seriousness of the offenses, the age of the child, and the circumstances and background of the Child, the welfare of the community requires that criminal proceedings be initiated in Criminal District Court.

J.A.G. filed this accelerated, priority appeal of the juvenile court's certification decision.

Tex. Fam. Code Ann. § 56.01(c)(1)(A), (h-1); Tex. R. App. P. 28.1, 40.1(a), (b).

## STANDARD OF REVIEW AND APPLICABLE LAW[3]

Generally, children are not subject to criminal proceedings in district court. *Matter of S.G.R.*, 496 S.W.3d 235, 238 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Instead, a juvenile

---

[3] In 2015, the Legislature repealed Article 44.47 of the Code of Criminal Procedure and added § 56.01(c)(1)(A) to the Family Code, which established an avenue for interlocutory review of transfer decisions by (the courts of appeals then) the Texas Supreme Court, rather than the Court of Criminal Appeals. *Ex parte Thomas*, 623 S.W.3d 370, 382–

court retains exclusive original jurisdiction over cases involving what would otherwise be criminal conduct committed by children between the ages of ten and 17. *Id.* (citing Tex. Fam. Code Ann. §§ 51.02(2)(a), 51.03(a)(1), 51.04(a)). However, the State may request that the juvenile court waive its jurisdiction and transfer the child to district court to be tried as an adult. *Id.* (citing Tex. Fam. Code Ann. §§ 54.02(a)–(c)).

The State carries the burden of persuading the juvenile court by a preponderance of the evidence that the welfare of the community requires transfer, either based on the seriousness of the alleged offense or the child's background or both. Tex. Fam. Code Ann. § 54.02(a)(3); *Bell v. State*, 649 S.W.3d 867, 886 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). In making that determination, the juvenile court must consider 54.02(f)'s list of non-exhaustive factors:

(1)     whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2)     the sophistication and maturity of the child;

(3)     the record and previous history of the child; and

(4)     the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

Tex. Fam. Code Ann. § 54.02(f). Not every factor must weigh in favor of transfer; any combination of these factors may support a juvenile court's decision to waive its jurisdiction and transfer the case to criminal district court. *Bell*, 649 S.W.3d at 886. The juvenile court's order must state the reasons for waiving jurisdiction, but it need not set forth detailed or case-specific findings as to these factors. *Id.* at 887.

---

83 (Tex. Crim. App. 2021) (citing Acts 2015, 84th Leg., ch. 74 (S.B. 888), § 3, eff. Sept. 1, 2015). The Texas Supreme Court has not yet addressed the standard of review or method of analyzing these orders since that change, but we rely on "decades of case law" preceding it. *Id.* at 383 (citing *Matter of C.A.P.*, 582 S.W.3d 504, 508 n.1 (Tex. App.—Waco 2018, pet. denied)).

We consider a juvenile court's decision to waive its jurisdiction and transfer a case to criminal district court under § 54.02(a) in two steps. *Id*. First, we review the juvenile court's findings of fact as to the § 54.02(f) factors under traditional sufficiency-of-the-evidence review. *Id*. With a legal-sufficiency challenge, we view the evidence in the light most favorable to the juvenile court's findings; so long as more than a scintilla of evidence supports the finding, a no-evidence challenge fails. *Matter of J.C.W.G.*, 613 S.W.3d 560, 569 (Tex. App.—San Antonio 2020, no pet.). With a factual-sufficiency challenge, we consider all the evidence presented to determine whether the juvenile court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Matter of R.I.C.*, No. 04-19-00834-CV, 2020 WL 806947, at *3 (Tex. App.—San Antonio Feb. 19, 2020, pet. denied) (mem. op.). As the fact-finder at the transfer hearing, the juvenile court is "the sole judge of credibility" and "may choose to believe or disbelieve any or all of the witnesses' testimony." *Id.*

If the juvenile court's findings are supported by legally and factually sufficient evidence, we turn to the second inquiry: whether the juvenile court abused its discretion by waiving its jurisdiction. *Bell*, 649 S.W.3d at 887. A juvenile court abuses its discretion by acting without reference to any guiding rules or principles and by making an "essentially arbitrary" decision to transfer based on the evidence presented. *Id.* However, "the juvenile court may waive its jurisdiction based 'on the strength of any combination of the criteria' listed in Section 54.02(f)." *Matter of R.I.C.*, 2020 WL 806947, at *4 (quoting *Hidalgo v. State*, 983 S.W.2d 746, 754 n.16 (Tex. Crim. App. 1999)).

DISCUSSION

In one issue on appeal, J.A.G. challenges the juvenile court's decision to waive its jurisdiction and transfer his case to criminal district court.[4] In making that determination, the juvenile court was required to find:

(1)    J.A.G. was alleged to have committed a felony;

(2)    J.A.G. was 15 years or older at the time he committed the alleged offense; and

(3)    after a full investigation and hearing, probable cause exists to believe J.A.G. committed the alleged offense and that because of the seriousness of the alleged offense or J.A.G.'s background, the welfare of the community requires criminal proceedings.

Tex. Fam. Code Ann. § 54.02(a). Because J.A.G. does not dispute that he was charged with a felony allegedly committed when he was over the age of 15, only the third prong of § 54.02(a) is at issue here.

## A.    Sufficient evidence supports the juvenile court's findings of fact.

### (1)    The nature of the offense

The first § 54.02(f) factor is whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person. J.A.G. allegedly violated Texas Penal Code § 43.26, Possession or Promotion of Child Pornography. The juvenile court found that "the offenses were against a person or persons."

---

[4] J.A.G. had not yet turned 18 when the juvenile court made its decision. Thus, the juvenile court ordered J.A.G.'s transfer under § 54.02(a) and not § 54.02(j), which applies when an individual allegedly commits a felony as a child but turns 18 before the juvenile court decides to transfer the case to criminal district court. *In re Thomas*, 623 S.W.3d at 377–78.

J.A.G. contends possession of child pornography is not an offense against a person because it is not contained within Title 5 of the Texas Penal Code, "Offenses Against the Person."[5] He maintains that the Legislature specifically declined to characterize it as an offense against a person, and the juvenile court erred in finding otherwise. The State counters that other chapters outside Title 5 include crimes against persons, such as robbery and offenses against the family. It also cites Ms. Salazar's testimony and report, which concluded the offense is a crime against a person.

Ms. Salazar was the only witness to expressly testify to this statutory factor, but her testimony is not the only evidence supporting the juvenile court's finding. The record contains graphic descriptions of the material J.A.G. allegedly possessed, which involved adults sexually attacking children as young as infants and toddlers. Possession of child pornography is not a victimless crime. Indeed, as the State points out, the Criminal Jurisprudence Committee, in voting to adopt what is now Penal Code § 43.26,

> was persuaded by the supporters of the bill who claimed: 'Child pornography is the worst type of pornography because it exploits defenseless and vulnerable members of society at a stage of life when they are profoundly impressionable. Even though it is a crime to produce, direct, or distribute child pornography, there is no law prohibiting its possession. It is traumatic enough for children to be photographed, but it is even more traumatic for the child to know that at any given moment the photographs are being distributed for others to see.'

*Vineyard v. State*, 958 S.W.2d 834, 838 n.7 (Tex. Crim. App. 1998) (en banc) (quoting Bill Analysis, Criminal Jurisprudence Committee, House Study Group (on a bill to prohibit the possession of child pornography) of HB 626, at pg. 25, April 23, 1985). Having reviewed the

---

[5] Title 5 includes five chapters: Chapter 19 (Criminal Homicide); Chapter 20 (Kidnapping, Unlawful Restraint, and Smuggling of Persons); Chapter 20A (Trafficking of Persons); Chapter 21 (Sexual Offenses); and Chapter 22 (Assaultive Offensives). Possession of child pornography is found under Chapter 43 (Public Indecency), Title 9 (Offenses Against Public Order and Decency).

record, we conclude sufficient evidence supports the juvenile court's finding that the alleged offense was against a person.

### (2) J.A.G.'s sophistication and maturity

The second § 54.02(f) factor is the sophistication and maturity of the child. The juvenile court found J.A.G. "is a sophisticated and mature child."

J.A.G. does not contest that the evidence demonstrates he has sufficient sophistication or maturity to understand the proceedings and assist in his defense. At the transfer hearing, Dr. Rollins testified to J.A.G.'s maturity level based, saying he "felt that [J.A.G.] had the maturity to also communicate with his attorney and . . . that he had a basic understanding of the situation." The juvenile court's finding on this factor is thus supported by sufficient evidence.

### (3) J.A.G.'s record and previous history

The third § 54.02(f) factor is the record and previous history of the child. The juvenile court found that J.A.G. "has a record of 1 referrals [sic] to the Webb County Juvenile Department since May 5, 2022, which include 1 referrals [sic] and 0 cases involving probation violations."

J.A.G. contends there is no evidence that his record or prior history supports the juvenile court's transfer of his case, citing to testimony from multiple witnesses regarding his "stable" home life, supportive family, lack of drug use, progress in academics, involvement in extracurricular activities, part-time employment, lack of previous referrals to the probation department, and compliance with all the conditions of his release. The State does not disagree, instead noting that the juvenile court merely had to consider this factor in making its determination and not every factor has to weigh in favor of transfer.

The juvenile court's finding on this factor—that J.A.G. has no other referrals to juvenile probation and no violations of his probation conditions—is supported by sufficient evidence.

11

J.A.G.'s argument regarding whether the juvenile court abused its discretion in transferring his case is addressed in the second inquiry below.

### (4) The prospects of adequate protection of the public and J.A.G.'s likelihood of rehabilitation

The last § 54.02(f) factor is the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court. On this point, the juvenile court found that "because of the seriousness of the offenses, the age of the child, and the circumstances and background of the Child, the welfare of the community requires that criminal proceedings be initiated in Criminal District Court."

J.A.G. argues that Dr. Rollins, Dr. Graham, and Ms. Salazar all agreed that he posed no threat to the community. He notes that this factor hinges on whether he could be rehabilitated through the services available to the juvenile court before he turned 18 (in approximately nine months). But J.A.G. contends that the juvenile court displayed a misunderstanding of Dr. Graham's testimony when it stated that Ms. Graham "said this type of treatment usually takes one-and-a-half to two years." J.A.G. maintains that this is the timeframe Ms. Graham attributed to treatment in a group setting, not on an individual basis, which J.A.G. urges "would move much faster." The State responds by highlighting Ms. Salazar's testimony, in which she expressed concern with the amount of time remaining before J.A.G.'s 18 birthday and whether it would be sufficient for his treatment. The State also points to Ms. Salazar's testimony that the specialized services in Laredo to treat someone charged with these offenses were available through adult probation, as opposed to through the juvenile system.

The juvenile court's finding is based on sufficient evidence. At different points throughout the hearing, the court directly examined witnesses regarding the length of treatment plans for

12

juvenile offenders of similar offenses and treatment resources available to juveniles versus adults in the area. The record demonstrates that the juvenile court was particularly concerned about J.A.G.'s age at the time of the hearing—that is, how much time remained within the juvenile system's timeframe for the purposes of J.AG.'s rehabilitation. Although age is not a statutory factor, it is appropriate for the juvenile court to consider age in determining the likelihood of J.A.G.'s rehabilitation in the juvenile system. *E.g.*, *Matter of Z.T.*, No. 05-21-00138-CV, 2021 WL 3645103, at *13 (Tex. App.—Dallas Aug. 17, 2021, pet. denied) (mem. op.); *Matter of L.W.*, No. 05-19-00966-CV, 2020 WL 728431, at *12 (Tex. App.—Dallas Feb. 13, 2020, no pet.) (mem. op.); *see also Ex parte Thomas*, 623 S.W.3d 370, 382 (Tex. Crim. App. 2021) (noting that the § 54.02(f) factors are not exclusive).

Ms. Salazar's testimony that she did not believe that J.A.G. could be "adequately rehabilitate[d]" before he turned 18 and that the adult probation department was "best equipped to provide the best specialized care" for J.A.G provides a sufficient evidentiary basis for the juvenile court's finding. Although J.A.G. focuses on Dr. Graham's testimony regarding a hypothetical intensive, faster-moving treatment plan, the juvenile court could have placed greater weight on testimony from the other witnesses regarding the typical length of treatment plans. *Matter of R.I.C.*, 2020 WL 806947, at *7.

## B. The juvenile court did not abuse its discretion by waiving its jurisdiction and transferring J.A.G.'s case.

Given the evidence in the record and specific findings of the juvenile court, its determination to waive its jurisdiction and transfer proceedings to criminal district court was neither arbitrary nor unreasonable. *See Rodriguez v. State*, 478 S.W.3d 783, 789 (Tex. App.—San Antonio 2015, pet. ref'd). The juvenile court was particularly concerned with how much time remained within its jurisdictional timeframe for the purposes of J.A.G.'s rehabilitation in light of

13

the nature of the offenses at issue. While not every factor supports transfer, "Texas courts have consistently held that not every factor must weigh in favor of transfer to justify the juvenile court's decision." *Matter of Z.T.*, 2021 WL 3645103, at \*14.

Here, the juvenile court's order meets what the statute requires. After a two-day hearing with extensive cross-examination of witnesses by J.A.G.'s counsel, the record demonstrates that the juvenile court considered each of the § 54.02(f) factors and entered an order that complies with the statute's requirements. *See Bell*, 649 S.W.3d at 886–87. We conclude the juvenile court did not abuse its discretion in granting the State's petition to waive its jurisdiction and transfer J.A.G.'s case to criminal district court.

## CONCLUSION

We affirm the juvenile court's order.

LISA J. SOTO, Justice

May 29, 2024

Before Alley, C.J., Palafox and Soto, JJ.